UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| INVENTEL PRODUCTS, LLC,<br>Plaintiff,<br>v.<br>JIMMY LI, LIN AMY, GODADDY.COM, SHOPIFY (USA) INC., SHOPIFY INC., GOOGLE LLC, GOOGLE.COM LLC, WU JINZHAO, JOHN/JANE DOE, ABC CORP.<br>Defendants. | Civ. No. 2:19-9190<br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff InvenTel Products, LLC's ("InvenTel") brings this action for various direct and contributory violations of its intellectual property rights. The matter comes before the Court on InvenTel's motion for a temporary restraining order and preliminary injunction, ECF No. 5, and Defendants Google LLC's ("Google"), GoDaddy Inc.'s, and GoDaddy.com, LLC's ("GoDaddy") oppositions thereto. ECF Nos. 21 & 23. For the reasons set forth below, InvenTel's motion—as to Google and GoDaddy—is **DENIED** and the Court's Temporary Restraining Order is **TERMINATED** as to Google and GoDaddy.

## I. BACKGROUND

InvenTel sells a variety of consumer products in the United States via mail-order and online sales, including the HD MIRROR CAM® ("HD MIRROR CAM"). The HD MIRROR CAM is a personal security camera designed for automobiles. InvenTel holds patents, copyrights, and trademarks on HD MIRROR CAM technology and marketing materials.

Defendants Jimmy Li, Lin Amy, and Wu Jinzhao ("Li Defendants") allegedly produce counterfeit HD MIRROR CAMs ("Counterfeit Products") in China and market them to U.S. customers online. The online sale of the Counterfeit Products is the subject of a related action ("Prior Action") brought by InvenTel against the Li Defendants, Google, GoDaddy, Shopify, and others (collectively, "Defendants") for intellectual property rights violations. *See InvenTel Products, LLC v. Li*, No. 2:18-cv-16590.

After voluntarily dismissing Google and GoDaddy from the Prior Action, InvenTel learned of a new website created by the Li Defendants to further market the Counterfeit Products: www.hdmirrorcambuy.com ("Website"). Abdul Dec. ¶ 4, ECF No. 5-2. On April 2, 2019, InvenTel initiated this suit alleging similar acts of infringement to the Prior Action but occurring on the new Website. As relevant here, InvenTel alleges that despite knowledge of the Prior Action, GoDaddy registered the Website and continues to host it. Compl. ¶¶ 74-84. InvenTel also alleges that it duly notified Google of the Li Defendants infringement, but

1

Google continues to allow them to purchase advertisements for the Website. *Id.* ¶¶ 88-89, 95. The Website also states it uses "Google Analytics to help [the Li Defendants] understand how [their] customers use the [Website]." *Id.* ¶ 96. Through this conduct, InvenTel asserts Google and GoDaddy are directly and contributorily liable for the infringement of InvenTel's rights.

On April 16, 2019, the Court entered an order temporarily restraining Defendants from infringing on InvenTel's intellectual property rights. *See* Order, ECF No. 6 ("TRO"). The TRO also provided an expedited briefing schedule to determine whether the Court should enter a preliminary injunction. *See id.* On April 23, InvenTel notified the Court that it had yet to effectuate service and requested an extension to the briefing schedule. *See* InvenTel Ltr., ECF No. 9. The Court granted the requested extension as to all Defendants except Shopify, which objected. *See* ECF No. 12. On April 30, the Court denied InvenTel's motion as to Shopify. *See* ECF Nos. 18-19. Since then, the motion has been fully briefed as to Google and GoDaddy. The Website has also become inaccessible to the public. *See* InvenTel Reply to GoDaddy at 5, ECF No. 25.

## II. DISCUSSION

InvenTel seeks preliminary relief enjoining Defendants from infringing on its intellectual property rights. *See* Mot., ECF No. 5. "A plaintiff seeking a preliminary injunction must establish that *[1]* he is likely to succeed on the merits, *[2]* that he is likely to suffer irreparable harm in the absence of preliminary relief, *[3]* that the balance of equities tips in his favor, and *[4]* that an injunction is in the public interest." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008). As to the first element (likely success on the merits), InvenTel will have to prove that Defendants are either directly or contributorily liable for infringements of InvenTel's intellectual property rights. *See, e.g., Parker v. Google, Inc.*, 242 F. App'x 833, 836-37 (3d Cir. 2007). Direct copyright liability requires "volitional conduct on the part of defendant" while contributory liability requires "material contribution to [a third party's] infringement" with "knowledge by the defendant that the third-party was directly infringing." *Id.* As to potential trademark liability, InvenTel may succeed on the merits if it can show that Google or GoDaddy "intentionally induce[d] another to infringe a trademark" or "continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement." *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 854 (1982).

The Court will deny the requested relief because InvenTel has not demonstrated likely success on the merits (element 1) for some allegations; or, for other allegations, that it will suffer irreparable harm without the requested preliminary relief (element 2).

### A. <u>Claims Against GoDaddy</u>

InvenTel's alleges that despite knowledge of the Li Defendants violative conduct, GoDaddy registered and continues to host the Website. *See* Compl. ¶¶ 74-84. As to the alleged hosting, GoDaddy's Business Operations Manager swears under penalty of perjury that "GoDaddy does not provide website hosting services for [the Website]." Hayden Decl. ¶¶ 2, ECF No. 22-1. InvenTel merely replies "[t]hat may or may not be true." InvenTel Reply to GoDaddy at 5. As the Court finds the Declaration credible, and thus InvenTel's argument for likely "hosting liability" unpersuasive, preliminary relief is inappropriate. *See Winter*, 555 U.S. at 20 (requiring likely success on the merits to warrant preliminary relief).

2

As to the alleged registration, GoDaddy notes that as the Website registrar, it has no control over the Website's content. GoDaddy Opp. at 14, ECF No. 22. Thus, "[t]here is literally nothing GoDaddy can provide to Plaintiff with respect to the content of [W]ebsite[]." *Id.* Notwithstanding GoDaddy's inability to control the Website's content, unregistering the Website (thus cutting off public access) would certainly stop the infringing content from appearing online. However, as InvenTel points out, the Website is no longer operational. *See* InvenTel Reply to GoDaddy at 6. Therefore, GoDaddy's power to unregister the Website is unnecessary to prevent irreparable harm. Because ordering the de-registration would have no practical impact, entering a preliminary injunction would be inappropriate. *See Winter*, 555 U.S. at 20 (requiring irreparable harm absent relief).

InvenTel argues that even though the Website is now unavailable, the injunction is still necessary because it "seeks to enjoin GoDaddy from registering more substantially similar domain names to these same Li Defendants." InvenTel Reply to GoDaddy at 6. The Court does not view the TRO that way. *See* TRO at 2-3 (potentially restraining support of *specific websites* and unauthorized use of *products or services "similar"* to InvenTel's intellectual property). The Court will not require GoDaddy to proactively restrict its computer systems from registering domain names "similar" to "www.hdmirrorcambuy.com," given the practical difficulties involved (e.g., defining "similar"). *See* Hayden Decl. ¶ 5. If InvenTel becomes aware of potentially infringing websites, it can take advantage of GoDaddy's established take down policy or even file an *in rem* lawsuit. *See id.* ¶ 15; 15 U.S.C. § 1125(d)(2)(A) (permitting cause of action to order registrar to transfer domain name rights).

InvenTel is unlikely to succeed on the merits of its hosting claim and will not suffer irreparable harm absent the requested relief from GoDaddy. Therefore, as to GoDaddy, preliminary relief is **DENIED** and the TRO is **TERMINATED**.

### B. Claims Against Google

InvenTel alleges that despite knowledge of the Prior Action, Google permits *(1)* the Website to use Google Analytics and *(2)* the Li Defendants to place advertisements for the Website via Google. Compl. ¶ 87-89, 96. As to the alleged use of Google Analytics, Google's Senior Trademark Counsel declares under penalty of perjury that "Google does not provide Analytics services for the [W]ebsite." Charleston Decl. ¶ 22, ECF No. 21-6. While the Website claims to use the Google Analytics tool—which is a free service available to every website owner, *id.*—that is not enough to justify a preliminary injunction against Google. First, even assuming the Website does use Google Analytics, that alone will not create liability for Google. *See Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 439 (1984) (holding that Sony could not be liable despite constructive knowledge that customers would use video recording devices to infringe on copyright rights); *see also Parker*, 242 F. App'x at 837 (finding infringing materials inclusion in Google's free search service inadequate). Thus, InvenTel is unlikely to succeed on the merits. Second, the Website is no longer operable. Thus, InvenTel will not suffer irreparable harm if the Court declines to preliminarily enjoin Google from allowing the Li Defendants to use of its free analytics tool. *See Winter*, 555 U.S. at 20 (requiring irreparable harm absent relief).

As to the alleged facilitation of advertising, Google notes that despite InvenTel's allegations, it had no prior knowledge permitting it to proactively stop the advertisements.

3

Google Opp. at 12, ECF No. 21. The ads for the Website involved a new domain, created by a new account, with a different payment method than any ads Google previously disabled. Charleston Decl. ¶ 20. Once Google became aware of InvenTel's allegations, it immediately acted to disable the ads. *Id.* ¶ 19. Therefore, even absent preliminary relief, Google is taking all feasible steps to stop its services from contributing to InvenTel's injuries. Therefore, maintaining a preliminary injunction against Google would be superfluous, and thus inappropriate. *See Winter*, 555 U.S. at 20 (requiring irreparable harm absent relief).

InvenTel's delayed service of its complaint and the TRO bolsters this conclusion. If InvenTel was truly concerned about irreparable harm absent preliminary relief, it would have made every effort to effectuate service as fast as possible to ensure Defendants abided by the TRO. Instead, InvenTel delayed a week, requested an extended injunction, and attempted to excuse its failure to serve by noting that the TRO's language (proposed by InvenTel) did not specifically set a service deadline. *See* Ltr., ERCF No. 9. Regardless of any explicit deadline, failure to immediately serve the TRO seriously undermines any argument that InvenTel will be irreparably harmed absent preliminary relief. *See PTT, LLC v. Gimme Games*, No. 13-cv-7161, 2014 WL 5343304, at *3 (D.N.J. Oct. 20, 2014) (finding delay between discovery of alleged infringement and request for injunctive relief "belies the urgency").[1]

### III. CONCLUSION

For the reasons set forth above, InvenTel's motion for a preliminary injunction, ECF No. 5, is **DENIED** as to Google and GoDaddy. The Temporary Restraining Order, ECF No. 6, is **TERMINATED** as to Google and GoDaddy.

**Date:** May 7, 2019

WILLIAM J. MARTINI, U.S.D.J.

---

[1] While the Court is mindful that personal circumstances may have delayed the initial filing of this action, *see* InvenTel Reply to Google at 5, ECF No. 26, they do not excuse InvenTel's subsequent failure to swiftly serve Google and GoDaddy with the TRO entered against them.

4