UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **INVENTEL PRODUCTS, LLC,**<br>**Plaintiff,**<br>v.<br>**JIMMY LI, LIN AMY, GODADDY.COM, LLC, GODADDY INC., SHOPIFY (USA) INC., SHOPIFY INC., INTER CONNECTS, GOOGLE LLC, WU JINZHAO, JOHN DOE, JANE DOE, ABC CORP.**<br>**Defendants.** | Civ. No. 2:19-9190<br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff InvenTel Products, LLC's ("InvenTel" or "Plaintiff") brings this action for various direct and contributory violations of its intellectual property rights. The matter comes before the Court on Defendants GoDaddy Inc., and GoDaddy.com, LLC's ("GoDaddy's") motion to dismiss. ECF Nos. 41-42. For the reasons set forth below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

**I. BACKGROUND**

InvenTel sells a variety of consumer products in the United States via mail-order and online sales, including the HD MIRROR CAM® ("HD MIRROR CAM"). The HD MIRROR CAM is a security camera for automobiles. InvenTel holds patents, copyrights, and trademarks on HD MIRROR CAM technology and marketing materials.

Defendants Jimmy Li, Lin Amy, and Wu Jinzhao ("Li Defendants") allegedly produce counterfeit HD MIRROR CAMs ("Counterfeit Products") in China and market them to U.S. customers online. The online sale of the Counterfeit Products is the subject of a related action ("Prior Action") brought by InvenTel against the Li Defendants, Google, GoDaddy, Shopify, and others (collectively, "Defendants"). *See InvenTel Products, LLC v. Li*, 18-cv-16590.

After voluntarily dismissing GoDaddy from the Prior Action, InvenTel learned of a new website created by the Li Defendants to further market the Counterfeit Products: www.hdmirrorcambuy.com ("Website"). On April 2, 2019, InvenTel initiated this suit alleging similar acts of infringement to the Prior Action but occurring on the new Website. As relevant here, InvenTel alleges that despite knowledge of the Prior Action, GoDaddy registered the Website and continues to host it. Compl. ¶¶ 74-84, ECF No. 1.

On April 16, 2019, the Court entered an order temporarily restraining Defendants from infringing on InvenTel's intellectual property rights. *See* Order, ECF No. 6 ("TRO"). After Google, GoDaddy, and Shopify submitted briefing and supporting material, the Court terminated

1

the TRO and denied InvenTel's motion for a preliminary injunction. Op. & Order, ECF Nos. 18-19, 29-30. Now before the Court is GoDaddy's motion to dismiss pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6). ECF No. 41.

## II. STANDARD OR REVIEW

FRCP 12(b)(6) provides for the dismissal of a complaint if the plaintiff fails to state a claim upon which relief can be granted. The movant bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). "[A]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). But the court is not required to accept as true "legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## III. DISCUSSION

Plaintiff asserts six claims against GoDaddy stemming from its alleged hosting and registration of the Website: (1) federal trademark infringement, (2) copyright infringement, (3) patent infringement, (4) unfair competition, false advertising, and false designation of origin (due to alleged Lanham and Patent Act violations), (5) New Jersey trademark infringement, and (6) violations of the New Jersey Consumer Fraud Act ("CFA"). In its opposition papers, InvenTel "withdr[e]w the allegations without prejudice" regarding GoDaddy's hosting of the Website. Opp. at 2, ECF No. 48. Accordingly, the only facts alleged against GoDaddy are that it provided domain-name registration services to the Website despite being notified of the Li Defendants' infringing activity using other websites via the Prior Action. *Id.* at 8-9 (discussing non-hosting allegations against GoDaddy).

### A. Lanham Act Violations (Counts One and Four (in part))

In Counts One and Four (in part), InvenTel asserts liability pursuant to the Lanham Act, specifically 15 U.S.C. 1125(a). Compl. ¶ 111, 129. GoDaddy argues that as a domain name registrar, it is immune from Lanham Act liability pursuant to 15 U.S.C. § 1114(2)(D)(iii). InvenTel argues "GoDaddy confuses 15 U.S.C. § 1125 and 15 U.S.C. § 1114(2)(D). Either GoDaddy does not realize these are two different statutes or they are trying to pretend they are [not] two different statutes." Opp. at 10. InvenTel is incorrect.

15 U.S.C. § 1114(2)(D) states:

> Notwithstanding any other provision of this chapter, the remedies given to the owner of a right infringed under this chapter or to a person bringing an action under section 1125(a) or (d) of this title shall be limited as follows . . . A domain name registrar, a domain name registry . . . shall not be liable for damages under this

2

section for the registration or maintenance of a domain name for another absent a showing of bad faith intent to profit from such registration or maintenance of the domain name.

Because Section 1114 provides the remedy for all Lanham Act violations, Section 1114(2)(D) limits liability for Section 1125 claims despite the "under this section" phraseology. *Petroliam Nasional Berhad v. GoDaddy.com, Inc.*, 737 F.3d 546, 551 (9th Cir. 2013). Accordingly, GoDaddy is immune "absent a showing of bad faith intent to profit." 15 U.S.C. § 1114(2)(D).

Plaintiff argues it "pled and established in detail through Declaration of Yasir Abdul [sic] and documentary evidence previously submitted to the Court that GoDaddy was provided with multiple notices of the infringement," and thus acted in bad faith in registering the Website.[1] Opp. at 13-15. The Court disagrees. The only pleaded basis for GoDaddy's knowledge that the Website would be used to infring is the Li Defendants' conduct using *other websites* and the Prior Action. *See* Compl. ¶¶ 76-83. But GoDaddy's domain name registration system is automatic. *See* May 7, 2019 Op. at 3, ECF No. 29 (discussing registration "computer systems"); *McTernan.*, 577 F.3d 521, 530 (permitting findings and conclusions at preliminary injunction stage to have preclusive effect). Therefore, without a warning that the specific URL being registered would be used for an illicit purpose, GoDaddy did not have a "bad faith intent to profit" from the automatic registration of "www.hdmirrorcambuy.com."[2] 15 U.S.C. § 1114(2)(D). In other words, failing to prevent its computer system from registering the Website does not constitute "bad faith." Plaintiff provides no basis for the proposition that GoDaddy must predict which URLs will be used for infringement purposes and proactively stop them from being registered. Accordingly, Plaintiff's Lanham-Act based claims (Count One and part of Four) are **DISMISSED**.

---

[1] InvenTel appears to misunderstand the facts courts consider in rendering decisions on motions to dismiss. Generally, Courts only consider the allegations in the complaint, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Further, where (as here) a district court has already ruled on a motion for a preliminary injunction, the court's findings and conclusions can "have preclusive effect if the circumstances make it likely that the findings are 'sufficiently firm' to persuade the court that there is no compelling reason for permitting them to be litigated again." *McTernan v. City of York, Penn.*, 577 F.3d 521, 530 (3d Cir. 2009) (citations omitted). This does not permit, however, InvenTel to supplement its Complaint through briefs or declarations. *See Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988).

[2] Plaintiff does allege generally that GoDaddy registered the Website "despite knowing (or should have known [sic]) that it was for infringing purposes." Compl. ¶ 83. While states of mind may be alleged generally, they still must be plausible to support a claim. *See Berkery v. Gudknecht*, 17-cv-5574, 2018 WL 3549228, at *3 (E.D. Pa. July 24, 2018) (citing circuit courts in agreement). "GoDaddy has approximately 17 million customers and over 6,000 employees worldwide." Compl. ¶ 75. Accordingly, absent factual allegations supporting GoDaddy's knowledge regarding the specific Website at issue, it is not plausible that GoDaddy knew (or should have known) that the Website would be used for infringing purposes. As discussed above, the only *facts* alleged do not support that knowledge.

### B. Copyright Infringement (Count Two)

Plaintiff's copyright infringement claim (Count Two) is relatively narrow once the hosting allegations are excerpted. Plaintiff argues GoDaddy is liable because—despite its knowledge of the Prior Action—GoDaddy registered the Website at issue here. Pl. Opp. at 19. That is insufficient to create direct or indirect copyright liability.

#### 1. *Direct Infringement*

Direct copyright claims require "unauthorized copying of original elements of plaintiff's work." *Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 203 (3d Cir. 2005). Adopting the Fourth Circuit's view of Internet Service Provider ("ISP") liability, the Third Circuit has made clear that "an ISP who owns an electronic facility that responds automatically to users input is not a direct infringer." *Parker v. Google, Inc.*, 242 F. App'x 833, 836 (3d Cir. 2007) (quoting *CoStar Group, Inc. v. LoopNet, Inc.*, 373 F.3d 544, 551 (4th Cir. 2004)). "When an electronic infrastructure is designed and managed as a conduit of information and data that connects users over the Internet, the owner and manager of the conduit hardly 'copies' the information and data in the sense that it fixes a copy in its system *of more than transitory duration*" as required for direct copyright liability. *id.* (cleaned up); 17 U.S.C. § 101 (defining "copies" and "fixed").

Here, GoDaddy, as a domain name registrar, does not "copy" Plaintiff's work for even a transitory duration, like an ISP does. GoDaddy only permitted its domain name registration system to automatically register the Website, to which offending material was subsequently posted. Like an ISP, as a domain name registrar for an allegedly infringing customer, GoDaddy did not "copy" any of Plaintiff's work. *See Parker*, 242 F. App'x at 836.

#### 2. *Indirect Infringement*

Indirect copyright liability requires: "(1) direct copyright infringement of a third-party; (2) knowledge by the defendant that the third-party was directly infringing; and (3) material contribution to the infringement." *Id.* at 837 (citing *Columbia Pictures Indus., Inc. v. Redd Horne, Inc.*, 749 F.2d 154, 160 (3d Cir.1984)).

Here, the mismatch between GoDaddy's alleged material contribution and the then-existing direct copyright infringement precludes liability. The only conduct by GoDaddy that could be considered "material contribution" is registering the Website. *See* Opp. at 2 (waiving "hosting" allegations). However, at the time of registration, the Website did not exist, and thus there was no "direct copyright infringement" taking place to which GoDaddy "materially contribute[d]." *Parker*, 242 F. App'x at 837. GoDaddy's alleged knowledge of direct infringement using other websites related to the Prior Action does not save the claim, as GoDaddy's registration of "www.hdmirrorcambuy.com" did not materially contribute to "*the* infringement" taking place on those other websites. *Id.* (emphasis added). If, for example, GoDaddy continued to host the Website after learning of the alleged infringement, it may be contributorily liable. But InvenTel withdrew its hosting allegations, *see* Opp. at 2, and the only potentially liability-creating conduct did not materially contribute to any copyright infringement taking place at the time of registration.

As Plaintiff fails to plead sufficient facts to produce direct or contributory copyright liability for GoDaddy's registration of the Website, Count Two is **DISMISSED**.[3]

### C. Patent Infringement (Counts Three and Four (in part))

Plaintiff's patent-based claims (Counts Three and part of Four) fail for largely the same reasons as the copyright- and Lanham-Act-based claims. To allege a claim for direct patent infringement, a complaint must include, *inter alia*, "a statement that defendant has been infringing the patent 'by making, selling, and using [the device] embodying the patent.'" *Zoetis LLC v. Roadrunner Pharmacy, Inc.*, 15-cv-3193, 2016 WL 755622, at *5 (D.N.J. Feb. 25, 2016) (quoting *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1334 (Fed. Cir. 2012)). Here, there is no allegation that GoDaddy makes, sells, or uses the HD MIRROR CAM.

To state an indirect patent infringement claim, plaintiffs must allege either inducement or contributory infringement. Inducement claims require (1) direct infringement and (2) knowing inducement with specific intent to encourage another's infringement. *In re Biogen '755 Patent Litig.*, 335 F. Supp. 3d 688, 714 (D.N.J. 2018) (quoting *ACCO Brands, Inc. v. ABA Locks Mfrs. Co.*, 501 F.3d 1307, 1312 (Fed. Cir. 2007)). Contributory infringement, on the other hand, "requires only proof of a defendant's *knowledge*, not *intent*, that his activity cause infringement." *Id.* at 715 (quoting *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1381 (Fed. Cir. 2017)).

Here, like in the trademark and copyright context, there is no plausible allegation that GoDaddy's took any action with the requisite knowledge to produce contributory liability. The only *factual* allegations is that GoDaddy registered the Website despite knowledge of the Prior Action and the Li Defendants' conduct alleged therein.[4] GoDaddy permitting its computer system to automatically register the Website, even with knowledge of the Prior Action, is not an activity GoDaddy knew would "cause infringement." *In re Biogen '755 Patent Litig.*, 335 F. Supp. 3d at 715. As previously stated, GoDaddy is not obligated to proactively guess which proposed domain names will likely be used for nefarious purposes.

As Plaintiff fails to allege GoDaddy acted with the requisite knowledge for a contributory infringement claim, it certainly did not sufficiently allege GoDaddy acted "with specific intent to encourage another's infringement." *Id.* (discussing requirements for inducement liability). Accordingly, InvenTel's patent claims against GoDaddy are **DISMISSED**. Further, because Plaintiff failed to allege facts making out plausible Lanham or Patent Act violations, *see supra*

---

[3] The Complaint also alleges "aiding and abetting" liability, but fails to specify any liability-creating conduct besides that described above, nor does Plaintiff defend its "aiding and abetting" claim in response to GoDaddy's contention that the copyright claims are deficient. Accordingly, any separate "aiding and abetting" claim against GoDaddy is **DISMISSED**.

[4] Confusingly, InvenTel relies in part on paragraph 88 of the Complaint to defend its patent claim, which states "Plaintiff duly notified *Google* regarding the infringement." Opp. at 18 (citing Compl. ¶ 88 (emphasis added)). Google's knowledge is immaterial to claims against GoDaddy. InvenTel's general allegations of GoDaddy's knowledge are also insufficient. *See supra* n.2.

Part III.A, Count Four is **DISMISSED** as well. *See* Compl. ¶ 129 ("This cause of action arises under Section 43(a) of the Lanham Act . . . as well as United States Patent Law.").

### D. New Jersey Trademark Infringement (Count Five)

Plaintiff's New Jersey Trademark Infringement claim (Count Five) fairs no better. As discussed, the only conduct attributed specifically to GoDaddy is registering the Website. *See* Compl. ¶¶ 133-39 (alleging generic "Defendants" are liable). Therefore, the Court will analyze weather that action can produce liability under New Jersey trademark law.

#### 1. *Direct Liability*

New Jersey trademark claims are evaluated under the same standard as their federal counterparts. *See, e.g., Cosmetic Warriors Ltd. v. Nailush LLC*, 17-cv-1475, 2017 WL 5157390, at *3 (D.N.J. Nov. 6, 2017) (listing cases). While the Court already dismissed InvenTel's federal trademark claims, it did so pursuant to a statutory defense not enacted into New Jersey law. *See supra* Part III.A. Accordingly, the Court will now consider whether the allegations sufficiently state a trademark claim. To assert a direct claim, a plaintiff must allege "(1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion." *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000). When defendants did not "design or create" the offending material, they cannot be directly liable for any "likelihood of confusion" the materials may cause. *Basketball Mktg. Co. v. FX Digital Media, Inc.*, 257 F. App'x 492, 494 (3d Cir. 2007).

Here, InvenTel does not plausibly allege GoDaddy directly "used" its marks. InvenTel only alleges GoDaddy registered the Website on which *the Li Defendants* used InvenTel's marks. Accordingly, GoDaddy cannot be directly liable for trademark infringement. *See id.* (precluding direct liability where defendant distributed—but did not design or create—material).

#### 2. *Contributory Liability*

As to contributory liability, the Supreme Court has held:

> [I]f a manufacturer or distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, the manufacturer or distributor is contributorily responsible.

*Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 854 (1982).

As already discussed, InvenTel does not allege facts sufficient to conclude GoDaddy "intentionally induced" the Li Defendants' infringement. *See supra* Part III.C (discussing patent liability under inducement theory). Accordingly, liability can only attach under the "continues to supply its product" theory outlined in *Inwood Laboratories v. Ives Laboratories*. But by its plane terms, that theory applies to "manufacturer[s] or distributor[s]" of a "product," not purveyors of a service. *Inwood Labs., Inc.*, 456 U.S. at 854. The Third Circuit has noted in dicta that "there is no reason why the doctrine should be confined in application to manufacturers." *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1432 (3d Cir. 1994) (listing examples of contributory liability in landlord-tenant and franchisor-franchisee contexts).

6

However, the Circuit has not delineated how far the contributory liability theory extends. Luckily, in *Lockheed Martin v. Network Solutions*, the Ninth Circuit analyzed whether a domain name registrar could be liable under the "continues to supply its product" theory. *See Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 984 (9th Cir. 1999). The court found that:

> [W]hen measuring and weighing a fact pattern in the contributory infringement context without the convenient "product" mold dealt with in *Inwood Labs.*, we consider the extent of control exercised by the defendant over the third party's means of infringement. Direct control and monitoring of the instrumentality used by a third party to infringe the plaintiff's mark permits the expansion of *Inwood Lab.'s* "supplies a product" requirement for contributory infringement.

*Id.* (cleaned up). Services provided by a domain name registrar do "not entail the kind of direct control and monitoring required" to establish contributory trademark liability. *Id.* at 985.

Here, like the registrar in *Lockheed Martin*, GoDaddy does not control or monitor the instrument of infringement (i.e., the Website). The allegations against GoDaddy are limited to the registration of the Website's URL, allowing Internet users to access the Website. *See* Opp. at 2 (waving hosting claims). As the Ninth Circuit made clear, providing such services "does not entail the kind of direct control and monitoring required to justify an extension of" *Inwood Laboratories*' contributory infringement theories. *Id.*[5]

As the facts alleged against GoDaddy are insufficient to produce either direct or contributory trademark liability, Plaintiff's New Jersey trademark claims (Count Five) are **DISMISSED**.

### E. New Jersey Consumer Fraud Act (Count Six)

GoDaddy argues InvenTel's New Jersey Consumer Fraud Act ("CFA") claim must be dismissed because (1) InvenTel lacks standing; (2) the Communications Decency Act bars the claim; and (3) the Complaint fails to allege either fraud or damages with the requisite particularity. Mot. at 27. Because the Court agrees InvenTel lacks standing, it does not have jurisdiction to issue an opinion on the remaining arguments. *See Lewis v. Casey*, 518 U.S. 343, 349 n.1 (1996) ("standing . . . is jurisdictional"); *Park v. Tsiavos*, 679 F. App'x 120, 126 (3d Cir. 2017) ("a court cannot decide the merits of a claim over which it lacks jurisdiction").

---

[5] The Third Circuit's dicta does not counsel otherwise. In finding contributory liability could extend beyond the manufacturer context, the Third Circuit cited cases from the Seventh and Eleventh Circuits. For contributory liability to attach, both circuit courts required more than the mere provision of a service with reason to know of direct infringement. *See Mini Maid Servs. Co. v. Maid Brigade Sys., Inc.*, 967 F.2d 1516, 1522 (11th Cir. 1992) ("[W]e hold that the franchisor may be held accountable only if it intentionally induced its franchisees to infringe another's trademark or if it *knowingly participated in a scheme* of trademark infringement carried out by its franchisees." (emphasis added)); *Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1149 (7th Cir. 1992) ("The common law, then, imposes the same duty on landlords and licensors that the Supreme Court has imposed on manufacturers and distributors."). Unlike the fact patterns before the Seventh and Eleventh Circuits, here, no special relationship, duty, or scheme involving the direct and contributory infringers is present.

"New Jersey courts have repeatedly made clear, the CFA seeks to protect consumers who purchase 'goods or services generally sold to the public at large.'" *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 514 (3d Cir. 2006) (quoting *Marascio v. Campanella*, 689 A.2d 852, 857 (N.J. App. Div.1997)). It "is not intended to cover every transaction that occurs in the marketplace, but, rather, its applicability is limited to consumer transactions which are defined both by the status of the parties and the nature of the transaction itself." *Id.* (cleaned up). Business entities can bring CFA claims "so long as they are 'consumers'" themselves. *City Check Cashing, Inc. v. Nat'l State Bank*, 582 A.2d 809, 811 (N.J. App. Div. 1990) (citations omitted). Further, some courts have found "competitors" have standing to bring CFA claims too. *See Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH*, 10-cv-453, 2010 WL 5239238, at *10 (D.N.J. Dec. 16, 2010) (noting limited support for "competitor" claims).

Here, InvenTel does not allege it is a "consumer" of GoDaddy's. *See generally* Compl. Instead, InvenTel argues that "[b]y actively registering a domain for a competitor of InvenTel's to permit purchasers to purchase from InvenTel's competitor rather than from InvenTel, and by profiting from the furnishing of such a Domain, GoDaddy became a competitor of InvenTel." Opp. at 20. The Court disagrees. Even assuming competitors have standing under the CFA, *see Church & Dwight Co.*, 2010 WL 5239238, at *10 (doubting competitor standing), GoDaddy did not become InvenTel's "competitor" by registering the Website. Holding otherwise would impermissibly expand the CFA's applicability beyond the "consumers" it was meant to protect. As GoDaddy points out, it "is a domain name registrar, and Plaintiff does not compete with domain name registrars." Reply at 14-15, ECF No. 51. Accordingly, Plaintiff's CFA claim (Count Six) is **DISMISSED**.

### F. Leave to Replead

GoDaddy moves to dismiss with prejudice. Leave to amend is generally granted absent "undue delay, bad faith or dilatory motive . . . , repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , [or] futility of amendment." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Here, amendment would be futile. InvenTel has abandoned its allegation that GoDaddy hosts the Website (and thus collects revenue despite knowledge of infringing activity). While InvenTel urges the Court to dismiss the hosting claims without prejudice, Opp. at 2, the Court is satisfied that GoDaddy does not, in fact, host the Website. Hanyen Decl. ¶ 24 & Ex. E, ECF No. 23-1. Accordingly, InvenTel will not be permitted to reallege the hosting allegations.

As to the automatic registration of the Website, as discussed above, that conduct cannot produce direct or contributory intellectual property liability on the facts of this case. GoDaddy did not have the requisite knowledge that the Li Defendants would use the Website to infringe on InvenTel's intellectual property rights when it engaged in the only conduct at issue—providing domain name registration services. InvenTel cannot plausibly allege GoDaddy acted with the requisite knowledge, as InvenTel filed its Complaint without even notifying GoDaddy of the new Website. Mot. at 9; InvenTel Preliminary Injunction Reply Br. to Shopify at 3, ECF No. 14 ("That is why InvenTel's counsel did not reach out to counsel for [GoDaddy] prior to bringing the application for a TRO."). Even considering facts outside the Complaint set forth

by InvenTel, GoDaddy could not be liable. InvenTel has not presented any theory under which GoDaddy is obligated to monitor and predict which websites might be used for infringing purposes. Even when the same individual registers multiple websites, it is the intellectual property holders' responsibility to protect their property, not third parties'. *See* May 7, 2019 Op. at 3. Had InvenTel taken advantage of GoDaddy's takedown request procedures, and GoDaddy refused to deregister the Website (despite evidence of infringement), InvenTel may have a claim. But here, InvenTel ran to federal court without informing GoDaddy of the infringement. Having no notice of the infringement, liability will not attach because GoDaddy did not take any action with the requisite knowledge. Accordingly, amendment of InvenTel's intellectual property claims (Counts One through Five) is futile.[6]

As to InvenTel's CFA claim (Count Six), amended pleadings will not create standing. *See supra* Part III.E (discussing standing requirements). InvenTel is simply not a competitor of GoDaddy's. InvenTel may be a GoDaddy customer, but not with respect to the transaction at issue here (i.e., the sale of registration services to the *Li Defendants*). Accordingly, amendment would be futile with respect to the CFA claim (Count Six) as well.

For these reasons, Counts One through Five (as alleged against GoDaddy) are **DISMISSED WITH PREJUDICE**. While the CFA claim will technically be **DISMISSED WITHOUT PREJUDICE**, leave to amend is **DENIED**, as amendment is futile. *See Cottrell v. Alcon Labs.*, 874 F.3d 154, 164 n.7 (3d Cir. 2017) ("Because the absence of standing leaves the court without subject matter jurisdiction to reach a decision on the merits, dismissals 'with prejudice' for lack of standing are generally improper."); *Great W. Mining & Mineral Co.*, 615 F.3d at 174 (instructing courts to deny leave to amend when futile).

## IV. CONCLUSION

For the reasons set forth above, GoDaddy's motion to dismiss, ECF No. 41, is **GRANTED IN PART** and **DENIED IN PART**. As all claims against GoDaddy are **DISMISSED WITHOUT LEAVE** to replead, GoDaddy is **DISMISSED** from this matter. An appropriate order follows.

Date: August 13, 2019

WILLIAM J. MARTINI, U.S.D.J.

---

[6] Amendment of the trademark claims (Counts One, Four (in part), and Five) is also futile given the limited, automated service provided by GoDaddy without specific knowledge. *See supra* Part III.D.2.