| | |
|---|---|
| INVENTEL PRODUCTS, LLC,<br><br>    **Plaintiff,**<br><br>    v.<br><br>JIMMY LI, *et al.*<br><br>    **Defendants.** | Civ. No. 2:19-9190<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff InvenTel Products, LLC's ("InvenTel" or "Plaintiff") brings this action for various direct and contributory violations of its intellectual property rights. The matter comes before the Court on Defendant Google LLC's ("Google") motion to compel arbitration, dismiss, or transfer the case to the Northern District of California, ECF No. 43, and Defendants Shopify Inc. and Shopify (USA) Inc.'s ("Shopify") motion to dismiss, ECF No. 53. For the reasons set forth below, the motions are **GRANTED IN PART** and **DENIED IN PART**.

## I.    BACKGROUND

InvenTel sells a variety of consumer products in the United States via mail-order and online sales, including the HD MIRROR CAM® ("HD MIRROR CAM"). The HD MIRROR CAM is a security camera for automobiles. InvenTel holds patents, copyrights, and trademarks on HD MIRROR CAM technology and marketing materials.

Defendants Jimmy Li, Lin Amy, and Wu Jinzhao ("Li Defendants") allegedly produce counterfeit HD MIRROR CAMs ("Counterfeit Products") in China and market them to U.S. customers online. The online sale of the Counterfeit Products is the subject of a related action ("Prior Action") brought by InvenTel against the Li Defendants, Google, Shopify, GoDaddy, and others (collectively, "Defendants"). *See InvenTel Products, LLC v. Li*, 18-cv-16590.

After voluntarily dismissing Google from the Prior Action, InvenTel learned of a new website created by the Li Defendants to further market the Counterfeit Products: www.hdmirrorcambuy.com ("Website"). On April 2, 2019, InvenTel initiated this suit alleging similar acts of infringement to the Prior Action but occurring on the new Website. On June 17, InvenTel dismissed the Prior Action against Shopify.

In this matter, InvenTel alleges that it "duly notified Google regarding the infringement by the Li Defendants" but "despite such notice . . . Google has permitted and continues to permit the Li Defendants" to use Google's advertisement services called "Adworks". Compl. ¶¶ 88-89, ECF No. 1. Other than notice through the Prior Action and settlement negotiations thereof, however, the Complaint does not specify how or when InvenTel notified Google of any infringement, or whether such notice related to the new Website. *See id.* ¶¶ 91-95. The Complaint does quote the Website's claim that "[w]e use Google Analytics to help us understand

how our customers use the Site – you can read more about how Google uses your Personal Information here." *Id.* ¶ 96 (linking to Google's privacy policy and opt out option).

As to Shopify, InvenTel makes general allegations about Shopify's business model and inadequate trademark infringement policy. *Id.* ¶¶ 54-66. With respect to the infringement at issue here, InvenTel alleges Shopify "hosts and/or has hosted some of the" websites used by the Li Defendants to sell Counterfeit Products. *Id.* ¶ 67. Thus, Shopify "facilitates sales" of the infringing products. *Id.* ¶ 68. Inventel alleges it notified Shopify of the Li Defendants' infringement in October 2018, via the Prior Action, and in settlement discussions, but Shopify continues to facilitate the Li Defendants' sales. *Id.* ¶ 69-71. Finally, the Complaint quotes language from the Website stating that "we use Shopify to power our online store" and referencing a Shopify website. *Id.* ¶ 73.

On April 16, 2019, the Court entered an order temporarily restraining Defendants from infringing on InvenTel's intellectual property rights. *See* Order, ECF No. 6 ("TRO"). After Google, GoDaddy, and Shopify submitted briefing and supporting material, the Court terminated the TRO and denied InvenTel's motion for a preliminary injunction. Op. & Order, ECF Nos. 18-19, 29-30. Now before the Court is Google's motion to compel arbitration, transfer, or dismiss, ECF No. 43, and Shopify's motion to dismiss pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(2) and 12(b)(6), ECF No. 53.

## II.  DISCUSSION

Shopify argues (A) it is not subject to the Court's personal jurisdiction while (B) Google argues this matter should be dismissed because the parties agreed to arbitrate or litigate in a different forum. Alternatively, both Google and Shopify argue (C) that Plaintiff fails to state a claim upon which relief can be granted. Each argument is taken in turn below.

### A.  **Personal Jurisdiction Over Shopify**

Shopify argues it is not subject to the personal jurisdiction of this Court. Shopify Br. at 6-11, ECF No. 53-2. Specifically, Shopify argues (1) it is not subject to General Jurisdiction in New Jersey, (2) it has no actual involvement with the Website at issue, and (3) even crediting the allegations of involvement, the Court lacks specific jurisdiction. *Id.*

### 1.  *General Jurisdiction*

Shopify argues because it is not incorporated in New Jersey, does not have a principle place of business in New Jersey, and has no offices in New Jersey, it is not subject to general jurisdiction in New Jersey. Shipify Br. at 7. In response, "Inventel declines to address the issue of General Jurisdiction at this time, but reserves the right to seek Discovery into the extent of Shopify's affiliations within the State of New Jersey if the Court declines to find [s]pecific [j]urisdiction." InvenTel Opp. to Shopify at 13 n.2, ECF No. 58.

InvenTel's response is insufficient. A party may not "decline[] to address the issue" to avoid the consequences of an argument. *Id.*; *see, e.g.*, *Alpine Bus. Grp., Inc. v. Sabathia*, 10-cv-4850, 2011 WL 589959, at *2 (D.N.J. Feb. 10, 2011) ("An unsupported position is considered waived or abandoned."). The allegations in the Complaint confirm Shopify's place of incorporation and business. Compl. ¶¶ 7-8. Nothing in the Complaint sets forth a basis for finding general jurisdiction exists, including the allegation that Shopify regularly conducts

business throughout the United States. *Compare* Compl. ¶¶7-8, *with Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (finding no general jurisdiction despite sizable sales in California). Thus, the Court need not provide discovery, as requested by InvenTel. InvenTel Opp. to Shopify at 13 n.2; *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) ("*If a plaintiff presents factual allegations* that suggest . . . the possible existence of the requisite contacts between the party and the forum state, the plaintiff's right to conduct jurisdictional discovery should be sustained." (emphasis added) (cleaned up)).

### 2. *Specific Jurisdiction*

Shopify challenges the Court's specific jurisdiction based on both (a) outside evidence and (b) accepting the allegations in the Complaint. Shopify Br. at 8-11.

#### a. **Outside Evidence**

When deciding Rule 12(b)(2) motions, "[i]f the district court does not hold an evidentiary hearing, the plaintiffs need only establish a prima facie case of personal jurisdiction. Moreover, it is well established that in deciding a motion to dismiss for lack of jurisdiction, a court is required to accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009).

Here, the Court has not held an evidentiary hearing. While Shopify encourages the Court to take judicial notice of its previous factual finding, it would be improper to credit Defendant's Counsel's word over the allegations in the Complaint without holding a hearing and providing for very limited discovery. *See id.*; *see also Toys "R" Us, Inc.*, 318 F.3d at 456 (mandating jurisdictional discovery once prima facie showing of jurisdiction made). However, because InvenTel fails to make the threshold showing of prima facie jurisdiction, discovery and a hearing are unnecessary. *See Toys "R" Us, Inc.*, 318 F.3d at 456.

#### b. **Accepting the Allegations**

The only substantive allegations against Shopify relating to the alleged infringement are that Shopify (1) "hosts and/or has hosted some of the Li websites which, as discussed above, were used to advertise, market and sell products in the United States and specifically in New Jersey"; (2) "facilitates sales in the United States and specifically in New Jersey"; (3) failed to stop infringing activities despite notification; and (4) "power[s]" the Website. Compl. ¶¶ 67-73.

> [T]he mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world. Rather, there must be evidence that the defendant "purposefully availed" itself of conducting activity in the forum state, by directly targeting its web site to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts.

*Toys "R" Us, Inc.*, 318 F.3d at 454.

Here, jurisdiction will not attach because the Complaint does not allege any "purposeful avail[ment]" by Shopify to the State of New Jersey. *Id.* Shopify does not even "operate" the Website at issue. The Complaint merely accuses Shopify of hosting or "powering" the Website. Compl. ¶¶ 67, 73. The allegations boil down to Shopify permitting the Li Defendants to use its

technology to operate the infringing Website, which in turn makes the Counterfeit Products available in New Jersey. But there are no allegations that Shopify itself directed any activity to the State. Compl. ¶¶ 3-4 (listing Li Defendant's addresses in Delaware, Arizona, California, and Michigan).[1] Thus, InvenTel has failed to make a prima facie showing of specific jurisdiction. Accordingly, Shopify's motion to dismiss is **GRANTED**.

### 3.    *Leave to Replead*

Shopify asks the Court to "dismiss with prejudice and put InvenTel's unreasonable and vexatious efforts to extend these proceedings to an end." Shopify Br. at 23.

"[A] dismissal for want of personal jurisdiction is without prejudice." *Smith v. United States*, 554 F. App'x 30, 32 n.2 (2d Cir. 2013); *see also Elfenbein v. Gulf & Western Indus., Inc.*, 590 F.2d 445, 449 (2d Cir. 1978) (observing that whether a dismissal is with or without prejudice refers to the "Res judicata effect of a dismissal," a question distinct from whether leave to amend should be granted). Leave to amend may still be properly denied, *Smith*, 554 F. App'x at 32 n.2, but it must be "justified." *Ragner Tech. Corp. v. Berardi*, 324 F. Supp. 3d 491, 518 (D.N.J. 2018). "Permissible justifications include: (1) undue delay; (2) bad faith or dilatory motive; (3) undue prejudice to the opposition; (4) repeated failures to correct deficiencies with previous amendments; and (5) futility of the amendment." *Id.* (quoting *Riley v. Taylor*, 62 F.3d 86, 90 (3d Cir. 1995)).

Here, amendment would be futile. Plaintiff argues "it is quite likely that were Plaintiffs to redraft the complaint, they could include additional factual information and allegations which the Court may find to be necessary yet lacking." InvenTel Opp. to Shopify at 25. But InvenTel fails to articulate any additional fact which would confer personal jurisdiction. *See id.* To the contrary, Shopify has convincingly evidenced that, in fact, they do not actually "host" or "power" the infringing Website. *See* Op. at 2 (Apr. 30, 2019), ECF No. 18. Thus, the Court fails to see how "it is quite likely" that InvenTel could amend its pleadings to articulate a sufficient connection between any Shopify conduct, this case, and New Jersey. InvenTel Opp. to Shopify at 25. Accordingly, leave to amend is **DENIED** as to Shopify.

### B.    Agreement to Arbitrate or Litigate with Google

Google argues that InvenTel's claims are covered by a mandatory arbitration and forum selection provision in Google's terms and conditions ("Terms"). Google Br. at 5, ECF No. 42-1. According to Google's Trademark Counsel, Google modified its Terms to include arbitration and mandatory venue selection clauses in September 2017. Charlston Decl. ¶ 4-5, ECF No. 43-2. The Terms require Google and its customers to "arbitrate all disputes and claims . . . that arise out of or relate in any way to the Programs or these Terms. *Id.* Ex. A. "Programs" is defined as "Google's advertising programs and services (i) that are accessible through the account(s) given to Customer in connection with these Terms or (ii) that incorporate by reference these Terms."

---

[1] Alleged prior knowledge that the Li Defendants were selling Counterfeit Products in New Jersey is insufficient. Even assuming Shopify's technology permitted the Li Defendants to make such sales, there is no "purposeful avail[ment]" by Shopify to the State. *See Toys "R" Us, Inc.*, 318 F.3d at 454-55 (finding that the two documented sales appear to be the kind of 'fortuitous,' 'random,' and 'attenuated' contacts that the Supreme Court has held insufficient to warrant the exercise of jurisdiction.").

*Id.* In opposition, InvenTel argues that it did not agree to mandatory arbitration and, in any event, the arbitration and forum selection clauses are inapplicable to this matter.

> [W]hen it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay. But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on the question. After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard.

*Guidotti v. Legal Helpers Debt Resolution*, 716 F.3d 764, 776 (3d Cir. 2013) (cleaned up).

Here, the Complaint and its supporting documents do not establish an agreement to arbitrate. Instead, Google submits evidence of an agreement to arbitrate through a declaration. *See* Charlston Decl. Further, InvenTel has responded to the arguments in favor of arbitration with enough facts "to place the agreement to arbitrate in issue." *Guidotti*, 716 F.3d at 776. Based on a review of InvenTel's records, InvenTel's CEO claims he never entered into an arbitration agreement with Google. *See* Abdul Decl. ¶¶ 4, ECF No. 47-1. InvenTel also challenges the relevancy of Google's records, arguing they pertain to a different company. *Id.* ¶¶ 6-7.

Because (1) the Complaint is not clear on an agreement to arbitrate and (2) InvenTel has raised enough facts to place an agreement to arbitrate at issue, the Court will not dismiss Plaintiff's claims at this stage. *See Guidotti*, 716 F.3d at 776 ("After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard."). Further, because Google's forum argument is based on the same agreement as the arbitration provision, Google's attempt to require dismissal or transfer for improper forum will also be denied at this stage. Google Br. at 8. Accordingly, Google's motion to dismiss or transfer pursuant to a purported arbitration or forum selection agreement is **DENIED WITHOUT PREJUDICE**.

### C.     Failure to State a Claim Against Google

Google alternatively argues that InvenTel fails to state a claim against it, and thus its claims should be dismissed under FRCP 12(b)(6). Google Br. at 8-24.

FRCP 12(b)(6) provides for the dismissal of a complaint if the plaintiff fails to state a claim upon which relief can be granted. The movant bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). "[A]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). But the court is not required to accept as true "legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## 1. *Intellectual Property Claims (Counts One through Five)*

In Counts One through Five, InvenTel alleges that generic "Defendants" are directly and contributorily liability for infringing material appearing on, and being sold via, the Website. Google argues the allegations against it are insufficient to create direct or contributory liability. InvenTel does not respond with respect to the direct claims. InvenTel Opp. to Google at 16 (copyright), 19 (Patent, Trademark, and Unfair Competition, False Advertising, and False Designation of Origin), ECF No. 47-1. Accordingly, the direct trademark, copyright, and patent claims—as well as the unfair competition, false advertising, and false designation of origin claims premised on direct infringement by Google (portions of Counts One through Five)—are **DISMISSED**. The non-direct theories of liability are addressed below.

### a. Copyright Infringement (Counts Two and Four)

"To establish a claim of contributory infringement, a plaintiff must show: (1) a third party directly infringed the plaintiff's copyright; (2) the defendant knew that the third party was directly infringing; and (3) the defendant materially contributed to or induced the infringement." *Leonard v. Stemtech Int'l Inc*, 834 F.3d 376, 387 (3d Cir. 2016) (cleaned up).

Google argues the allegations are insufficient to create contributory copyright liability because InvenTel failed to plead (a) "Google's knowledge of the alleged copyright infringement" or (b) that "Google materially contributed to the infringement." Google Br. at 10-12. As to knowledge, Google claims "InvenTel does not allege Google had knowledge of any specific infringing websites while continuing to supply the Li Defendants with access to its advertising services or that it informed Google about copyright infringement by those sites." *Id.* at 10. Google is incorrect. The Complaint alleges "Plaintiff duly notified Google regarding the infringement by the Li Defendants" but "despite such notice . . . Google has permitted and continues to permit the Li Defendants" to use Google's services. Compl. ¶¶ 88-89. While left somewhat ambiguous, InvenTel does specify that one method of providing notice was through the Prior Action. Compl. ¶ 91. The complaint in the Prior Action lists several specific websites used by the Li Defendants to sell Counterfeit Products. *See* Compl. ¶¶ 22, 35, *InvenTel Products, LLC v. Li*, 18-cv-16590 (listing websites and copyrights at issue). Further, once Google received the Complaint in this action, they were made aware of the alleged infringement taking place on "www.hdmirrorcambuy.com." Compl. ¶¶ 40-41. Despite such notice, Google allegedly "*continues* to permit the Li Defendants to bid in [Adworks] auctions." *Id.* ¶ 89 (emphasis added). InvenTel also alleges Google continues to permit InvenTel to use Google Analytics. *Id.* ¶ 96. Accordingly, so long as permitting such activity constitutes "material contribution," InvenTel will have stated a claim. *See Leonard*, 834 F.3d at 387.

With respect to "material contribution," Google argues their "passive provision of interactive computer services" fails to satisfy the contribution requirement. Google Br. at 11.

Further, Google argues it did not "act in concert" with the Li Defendants and that the services they provide do not "bear any direct relationship to the infringing acts," and thus cannot create liability. *Id.* (quoting *Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 499 (E.D. Pa. 2006), *aff'd*, 242 F. App'x 833 (3d Cir. 2007)).

At this stage, where the Court must accept the allegations as true and draw every reasonable inference in InvenTel's favor, *see Malleus*, 641 F.3d at 563, the Court cannot conclude Google did not materially contribute to the infringement of Plaintiff's copyrights. The Complaint alleges Google was notified of the Li Defendants' activities but continued to permit them to purchase ads. Compl. ¶¶ 89, 95. The ads directed consumers to the Website, which in turn displayed InvenTel's copyrighted materials. Thus, the entire purpose of the ads was to lead consumers to the Website to trade off InvenTel's intellectual property. Accordingly, to the extent a "direct relationship to the infringing acts" is required, *Parker*, 422 F. Supp. 2d at 499, such a relationship exists here. Further, to the extent Google must have "acted in concert" with the Li Defendants, *id.*, the alleged sale and placement of advertisements to direct consumers to the infringing Website—with warning of the Website's content—constitutes concerted action.[2]

For these reasons, Google's motion to dismiss the indirect copyright claims (Counts Two and part of Four) is **DENIED**. However, when the Court is able to analyze extrinsic evidence at the summary judgment stage (including the actual nature and extent of services provided), it may reconsider the sufficiency of InvenTel's copyright claims.

### b. Patent Liability (Counts Three and Four)

With respect to patent liability, Google argues it (1) cannot be jointly liable for the Li Defendants' direct infringement; (2) cannot be contributorily liable because it lacked knowledge of the patents involved and the direct infringement taking place; and (3) cannot be liable under an "inducement" or "aiding and abetting" theory due to InvenTel's failure to allege intent, knowledge, or inducement on Google's part. Google Br. at 12-15. InvenTel fails to respond to Google's arguments except with respect to Google's knowledge of direct infringement. InvenTel Op. to Google at 19. Accordingly, any claims based on joint-direct, inducement, or aiding-and-abetting theories are **DISMISSED**.

With respect to the knowledge requirement of a contributory claim, "contributory infringement . . . requires only proof of a defendant's knowledge, not intent, that his activity cause infringement." *In re Biogen '755 Patent Litig.*, 335 F. Supp. 3d 688, 715 (D.N.J. 2018) (quoting *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1381 (Fed. Cir. 2017)). Google argues "InvenTel fails to allege it provided Google with pre-suit notice of its patent or notice that any website offered allegedly patent-infringing products for sale." Google Br. at 12. But InvenTel alleges that (1) it informed Google of the Li Defendants infringement (including

---

[2] Similarly, with respect to the Google Analytics, given the allegations of notice and continued provision of services in the Complaint, the Court cannot conclude that Google did not knowingly and materially contribute to the Li Defendants' infringement as a matter of law. It may be that the services provided do not constitute material contribution. But here, where Plaintiff is entitled to every reasonable inference, continuing to provide "analytics" services to individuals Google knew were trading off InvenTel's copyrights constitutes knowing, material support. *See Malleus*, 641 F.3d at 563.

through service of the Complaints in this and the Prior Action, which list the websites and patents at issue) and (2) despite such notice, Google *continued* to provide ad and analytics services. Compl. ¶¶ 34, 88-96. Like in the copyright context, that is enough at the motion to dismiss stage to rebut Google's arguments. It is reasonable to infer from the facts alleged that Google knew selling ads directing consumers to the Website would contribute to the sale of Counterfeit Products. *See Malleus*, 641 F.3d at 563 (requiring the Court to accept allegations as true and give plaintiff benefit of every reasonable inference). Accordingly, Google's motion to dismiss the contributory patent claim is **DENIED**.[3]

### c. Trademark Liability (Counts One, Four, and Five)[4]

Google argues InvenTel's trademark claims should be dismissed because (1) InvenTel failed to sufficiently allege knowledge and (2) the "aiding and abetting" liability theory asserted by InvenTel has been rejected by the Third circuit. Google Br. at 17-18.

Google is correct as to "aiding and abetting" liability. *See Elec. Lab. Supply Co. v. Cullen*, 977 F.2d 798, 806-07 (3d Cir. 1992) ("Having examined both the text and legislative history of the statute, we can find no evidence of a congressional intent to impose aiding and abetting liability."). In any event, Plaintiff failed to defend—and thus waived—the claim. *See e.g.*, *Lawlor v. ESPN Scouts, LLC*, 10-cv-05886, 2011 WL 675215, at *2 (D.N.J. Feb. 16, 2011) ("Where an issue of fact or law is raised in an opening brief, but it is uncontested in the opposition brief, the issue is considered waived or abandoned by the non-movant."). Accordingly, the "aiding and abetting" claim is **DISMISSED**.

As to contributory trademark liability, InvenTel adequately alleged Google's knowledge. To state a claim, plaintiffs must allege the defendant "continue[d] to supply its product to one whom it knows or has reason to know is engaging in trademark infringement." *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 854 (1982). As discussed above, InvenTel alleges it informed Google of the Li Defendants' infringement and the websites used to accomplish it. *See* Compl. ¶¶ 25, 88, 91-92. But despite such notice, Google allegedly continues to do business with the Li Defendants, driving more consumers to the offending Website. *Id.* ¶¶ 89-90, 93, 95-96. Accordingly, Google's motion to dismiss InvenTel's contributory trademark claims is **DENIED**.

---

[3] The Court expresses no view on the sufficiency of InvenTel's allegations as to other elements of a contributory patent infringement claim. *See* 35 U.S.C. § 271(c) (requiring sale of a component, material, or apparatus constituting a material part of a patented invention or process that is "not a staple article or commodity of commerce suitable for substantial noninfringing use"). Google argued InvenTel "fail[ed] to allege it provided Google with pre-suit notice of its patent or notice that any website offered allegedly patent-infringing products for sale." Google Br. at 13. That argument was sufficiently rebutted, and it would be improper for the Court to reach other issues *sua sponte*.

[4] Count Five is premised on a New Jersey state trademark theory. Because New Jersey trademark claims are evaluated under the same standard as their federal counterparts, the Court's conclusions in this section apply equally to Counts One and Four. *See, e.g.*, *Cosmetic Warriors Ltd. v. Nailush LLC*, 17-cv-1475, 2017 WL 5157390, at *3 (D.N.J. Nov. 6, 2017) (listing cases).

### d. Unfair Competition and False Designation of Origin (Count Four)

Google argues that "Courts apply the same analysis and conclusions for a trademark infringement claim . . . as they do for an unfair competition claim [or] a false designation of origin claim." Google Br. at 18. Thus, Google argues, for the same reasons that the trademark claims should be dismissed, InvenTel's unfair competition [and] false designation of origin . . . claims . . . should also be dismissed." *Id.* at 19. InvenTel does not substantively respond to Google's arguments, only rehashes its theory of liability. InvenTel Opp. to Google at 19-20.

Because Google's arguments rest on the same grounds as the trademark claims, the same conclusions should follow. Direct and "aiding and abetting" unfair competition and false designation of origin claims are **DISMISSED**. However, Google's motion is **DENIED** as to the contributory theory for unfair competition and false designation of origin.

### e. False Advertising (Count Four)

As to false advertising, Google argues the Complaint: (1) is "devoid of any factual allegation that anyone associates Google with InvenTel, or perceives InvenTel to be the source of any of Google's services, or that Google has 'misrepresented the nature, characteristics, qualities, or geographic origin of its or another person's goods, services, or commercial activities'" and (2) does not allege an injury caused by *Google's* misrepresentation. Google Br. at 19 (cleaned up). InvenTel fails to substantively respond to Google's arguments, instead re-summarizing its factual allegations against the Li Defendants. *See* InvenTel Opp. to Google at 19-20. InvenTel merely argues Google "provided active links to web surfers." *Id.*

To state a false advertising claim, plaintiffs must allege "an injury to a commercial interest in sales or business reputation proximately caused by *the defendant's* misrepresentations." *Lexmark Int'l v. Static Control Components, Inc.*, 572 U.S. 118, 140 (2014) (emphasis added). Here, InvenTel fails to allege any misrepresentation by *Google*. *See generally* Compl. Nor does InvenTel assert a contributory false advertising theory. *See id.* ¶¶ 128-132; InvenTel Opp. to Google at 19-20. Therefore, the false advertising claim against Google is **DISMISSED**.

### 2. New Jersey Consumer Fraud Act (Count Six)

Google argues the New Jersey Consumer Fraud Act ("CFA") claim should be dismissed because (1) InvenTel failed to identify any facts supporting its CFA claim and (2) the Communications Decency Act ("CDA") immunizes Google from consumer fraud liability. Google Br. at 20-24. InvenTel counters by asserting it is a competitor of Google's, and thus entitled to bring a CFA claim. InvenTel Opp. to Google at 20. As to CDA immunity, InvenTel asserts it does not apply because the CFA claim is based on intellectual property law violations and in any event, the CDA does not apply by its own terms. *Id.* InvenTel is mistaken.

"The elements required for [CDA] immunity are: (1) that the defendant is a provider or user of an 'interactive computer service;' (2) that the asserted claims treat the defendant as the publisher or speaker of the information; and (3) that the information is provided by another 'information content provider.'" *Parker*, 242 F. App'x at 838.

Here, the claims against Google meet all three elements. First, the allegations relate to Google's provision of Adworks and analytics services, both interactive computer services.

Second, InvenTel seeks to hold Google liable for the Li Defendants' publication of infringing materials—thus treating Google as the publisher or speaker. *See* Compl. ¶ 142. Third, the Li Defendants provided the actual information at issue. *Id.* ¶¶ 39-53.

InvenTel's counterarguments are inapposite. While the CDA does not limit laws pertaining to intellectual property, 47 USC § 230(e)(2), the CFA is not an intellectual property statute, *see* N.J.S. § 56:8-2 (banning use of improper business practices). Further, while the CFA is not "construed to prevent any State from enforcing any State law that is consistent with this section," it also is explicit that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with [the CDA]. 47 USC § 230(e)(3). The New Jersey CFA claim here would be inconsistent with the immunity provided under the CDA. Therefore, the CFA claim is **DISMISSED**.

### 3. *Leave to Amend*

Google argues that leave to amend should be denied because amendment would be futile. Google Br. at 24. InvenTel fails to respond. *See generally* InvenTel Opp. to Google. Therefore, the Court will not provide leave to amend the Complaint. *See, e.g., Lawlor*, 2011 WL 675215, at *2 (finding failure to respond to argument results in waiver).[5]

## III. CONCLUSION

For the reasons set forth above, Shopify's motion to dismiss, ECF No. 53, is **GRANTED** and Google's motion to compel arbitration, dismiss, or transfer the case to the Northern District of California, ECF No. 43, is **GRANTED IN PART** and **DENIED IN PART**. An appropriate order follows.

Date: October /0, 2019      WILLIAM J. MARTINI, U.S.D.J.

---

[5] Even if InvenTel had requested leave to amend, the Court agrees with Google that amendment is futile. Only the direct and otherwise legally impossible claims have been dismissed, which InvenTel largely failed to defend. Even construing Google's alleged involvement in the light most favorable to InvenTel, Google could not be directly liable. InvenTel is entitled to discovery on the issue of mandatory arbitration or transfer. If this Court retains jurisdiction after those issues are settled, InvenTel can press forward under its contributory theories against Google.